**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| **FUTURE STREET LIMITED,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 20-cv-11020-DJC** |
| | ) | |
| **BIG BELLY SOLAR, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                      **July 31, 2020**

**I.      Introduction**

Plaintiff Future Street Limited ("Future Street") has filed this lawsuit against Big Belly Solar ("Big Belly") for breach of contract and violation of Mass. Gen. L. c. 93A and seeks declaratory judgment, injunctive relief and damages in connection with its licensed distribution of Big Belly's solar-powered intelligent waste and recycling bins.  D. 3.  Future Street has moved for a preliminary injunction seeking to compel performance from Big Belly pursuant to the parties' licensing agreement and enjoin Big Belly from contacting Future Street's customers to inform them that Future Street is no longer an authorized Big Belly distributor.  D. 5 at 2.  Big Belly has filed a counterclaim against Future Street asserting various claims, D. 26, and a cross motion for a preliminary injunction enforcing its right to terminate its licensing agreement with Future Street and mandating compliance with the post-termination provisions of that agreement. D. 28 at 20.  For the reasons discussed below, the Court DENIES Future Street's motion, D. 5, but ALLOWS Big Belly's motion, D. 28, to the extent explained in this Memorandum and Order.

1

## II.      Standard of Review

Preliminary injunctive relief "is an 'extraordinary and drastic remedy.'"  Voice of the

Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011) (quoting Munaf

v. Geren, 553 U.S. 674, 689-90 (2008)).  To obtain such relief, the Court must consider:  (1) the

movant's likelihood of success on the merits; (2) the risk of the movant suffering irreparable harm

in the absence of injunctive relief; (3) the balance of equities; and (4) whether granting the

injunction is in the public interest.  Corp. Techs., Inc. v. Harnett, 731 F.3d 6, 9 (1st Cir. 2013).

Likelihood of success on the merits is the "main bearing wall of this framework."  W Holding

Co. v. AIG Ins. Co.-Puerto Rico, 748 F.3d 377, 383 (1st Cir. 2014) (quoting Ross-Simons of

Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 16 (1st Cir. 1996)) (internal quotation marks

omitted).  Irreparable harm, on the other hand, is measured "on a sliding scale, working in

conjunction with a moving party's likelihood of success on the merits, such that the strength of

the showing necessary on irreparable harm depends in part on the degree of likelihood of success

shown."  Gedeon v. City of Springfield, No. 16-cv-30054-MGM, 2017 WL 4212334, at *8 (D.

Mass. Feb. 24, 2017) (quoting Braintree Labs., Inc. v. Citigroup Glob. Mkts., Inc., 622 F.3d 36,

42-43 (1st Cir. 2010)).  The movant "bears the burden of establishing that these four factors weigh

in [its] favor."  Esso Standard Oil Co. (P.R.) v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006).

## III.     Factual Background

The following facts are drawn from the verified complaint (sworn by Don Coughlan, Chief

Executive Officer of Future Street), D. 3, Future Street's motion for a preliminary injunction, D.

5, Coughlan's affidavit, D. 7, Big Belly's opposition to the same and cross motion for preliminary

injunction, D. 28, Big Belly's verified counterclaim (sworn by Brian Phillips, President and Chief

Executive Officer of Big Belly), D. 26-27, and the parties' respective reply briefs, D. 30, 32.

Big Belly develops, manufactures and sells solar-powered intelligent waste and recycling bins to urban centers around the world.   D. 3 ¶ 2, 17.  Future Street, as Big Belly's distributor, holds a perpetual license in 63 countries throughout Europe and the Middle East (the "Territory"). D. 3 ¶ 2.   On April 9, 2018, Big Belly and Future Street entered into a licensing agreement (the "Agreement") under which Big Belly granted Future Street an exclusive and perpetual license to distribute its  products in the Territory.  D. 3 ¶ 19; D. 3 at 36-77 (the Agreement).  The Agreement, provided that as consideration for the granting of license rights, Future Street would pay $500,000 within seven days of the effective date of the Agreement, an additional $500,000 within 30 days of the effective date of the Agreement for products; another $1 million six months from the effective date of the Agreement for products; and a $2 million investment in its business related to the sale of Big Belly's products in the Territory in the first year of the Agreement.   D. 3 ¶ 20; D. 3 at 38.  Under the Agreement, Big Belly agreed to provide support and maintenance services for the products it supplied to Future Street.  D. 3 ¶ 27.  After a year or so of operating under the Agreement, on August 12, 2019, the parties entered into an Amendment to the Agreement by which Future Street agreed to buy 5,000 more units of products of Big Belly, in addition to the minimum quota in the Agreement, and Big Belly would provide these products at a reduced price. D. 26 ¶¶ 22, 27; D. 3 ¶¶ 79-81.

In relevant part, Section 6 and Exhibit B to the Agreement set forth warranties on the part of Big Belly for products supplied to Future Street. D. 3 at 41-42, 58-61. Other than the limited warranty made directly to customers of Big Belly's current customer license agreement (Exhibit B to the Agreement), Big Belly "makes no warranties or representations as to any company product or as to any services rendered to licensee, its customers or any other person." D. 3 at 41 (text in Agreement in all caps).  Further, as the Agreement otherwise set forth and to the extent

permitted by law, Big Belly "disclaim[ed] all express and implied warranties, oral or written, including but not limited to, implied warranties of merchantability, fitness for a particular purpose, noninfringement and any warranties arising from course of dealing, course of performance or usage of the trade." D. 3 at 41.  The Agreement further provides that Future Street recognized that the customer warranty in Exhibit B to the Agreement did not apply to its own "use of, sale of, or any other activities" involving Big Belly's products and that Future Street was "not an intended or unintended beneficiary of such warranty," D. 3 at 41, but the warranty remedies were available to customers of Future Street that buy Big Belly products.  D. 3 at 58.  In the instance of a failure of Big Belly's product "to perform in accordance with any warranty, representation or disclosure provided with the product," the Agreement requires Future Street to provide written notice "within thirty business days of having been provided notice of such failure." D. 3 at 42.

Section 15 of the Agreement  provides that if a dispute arises out of or in connection with the Agreement or the performance, validity, or enforceability of the Agreement, then the complaining party shall "give to the other written notice of the [d]ispute, setting out its nature and full particulars together with relevant supporting documents."  D. 3 at 49.  After receiving the dispute notice, the Chief Financial Officer ("CFO") of Big Belly and Chief Executive Officer ("CEO") of Future Street "shall attempt in good faith to resolve the [d]ispute." Id.  If the CFO of Big Belly and CEO of Future Street are unable to resolve the dispute within 30 days of service of the dispute notice, the dispute should be referred to the President and CEO of Big Belly and Chairman of Future Street "who shall attempt in good faith to resolve it." D. 3 at 49.

As to termination, the Agreement provides that it may be terminated for the enumerated reasons provided in Agreement including but not limited to "that Licensee fails to make any

undisputed payment due. . . and such failure continues for a period of at least thirty (30) days after

[Big Belly] has given [Future Street] written notice to cure the situation thereof, such termination

to be effective on the date stated in the termination notice" or in the event that Future Street is "in

breach of the Minimum Purchase Quotas" as set forth in Exhibit C to the Agreement.  D. 3 at 50-

51.  Upon termination, the parties agreed that certain provisions of the Agreement would survive

termination and that Future Street "shall not be relieved . . . of any obligations for any unpaid

balances due for goods shipped prior to termination of this Agreement."  D. 3 at 51.  The

provisions of the Agreement that survive termination include Sections 11 (concerning protection

of confidential information disclosed between the parties) and 12 (concerning non-competition

by Future Street).  D. 3 at 51.

> ### 1.    *Future Street Begins to Receive Allegedly Defective Products*

Since April 2019, when Big Belly transitioned the manufacturing of its compactor units

from the United States to Mexico, Future Street alleges it has received products from Big Belly

that were "riddled with defects to the point of being unusable."  D. 3 ¶ 3.  Future Street claims

that despite repeated requests, Big Belly has failed and refused to correct these defects or provide

other assistance and support.  D. 3 ¶ 3.  Future Street claims that it attempted to invoke the dispute

resolution procedures under the Agreement, although it concedes that it did not file a formal

dispute notice (detailing various quality control issues and seeking relief from the minimum

purchase requirements) until March 27, 2020.  D. 3 ¶¶ 4, 85; D. 6 at 10.

> ### 2.    *Future Street Withholds Payments for Products to Big Belly*

On January 17, 2020, Coughlan, Future Street's CEO, expressed the company's intent to

withhold payment for purchase orders as a direct result of Big Belly's failure to address the

product defects.  D. 6 at 7; D. 3 at ¶ 69.  Brian Phillips, Big Belly President and CEO, responded

to this message by reinforcing the warranty procedures agreed upon and reminding Coughlan that

the product issues "by no means relieve [Future Street's] contractual obligations [under the

Agreement] to make payments or take product."  D. 27 at 41.

### 3.    *The Parties Attempt to Resolve Product and Payment Issues*

Future Street contends that during a February 10, 2020 call, the parties agreed that

representatives from Big Belly would visit Future Street's facilities in Europe to assess and

validate the scale and number of product defects to assist with training and repairs, but have yet

to do so.  D. 6 at 8.   On February 19, 2020, Big Belly emailed Future Street regarding an

incomplete wire and noting that the remaining balance due on this invoice was $21,242.00.  D.

28-1 at 11.   Future Street responded on February 23, 2020 apologizing for any confusion and

promising to "make good in the next payment."  D. 28-1 at 11.  On February 24, 2020, Big Belly

asked Future Street whether it had a chance to "review Future Street's statement regarding the

other outstanding invoices," to which there is no reply.  D. 28-1 at 10.  Big Belly  inquired further

of Future Street on March 3, 2020, seeking an update regarding the then $310,000 past due

balance. D. 28-1 at 9. The message is forwarded by Big Belly's CFO to include Big Belly and

Future Street's CEOs, urging Future Street to contact Big Belly immediately "if there is a larger

issue," it should "be made aware of" regarding the nonpayment.  D. 28-1 at 9.

During a March 4, 2020 meeting, Future Street "informed Big [B]elly that Future Street

was going to pause future payments to allow time for Big [B]elly to rectify the quality issues

discussed during the meeting."  D. 6 at 8.  Future Street also sought to be excused temporarily

from making orders and payments due to the worldwide impact of the COVID-19 pandemic.  D.

3 ¶ 4.  Big Belly alleges that Future Street has selectively paid for items since March 2020, when

it deemed them "necessary to its own business as well as has made clear during negotiations with

Big Belly that they are able to immediately pay "hundreds of thousands of dollars" but only if Big Belly agreed to better terms.  D. 28 at 3.

Big Belly asserts that the product quality issues refer to "minor cracking underneath/behind a solar bubble on the back hinge of top covers of Big Belly's waste units" and are cosmetic issues and thus not material to the operation of these units.  D. 28 at 2.  They further allege that these issues were being addressed consistent with the agreed-upon warranty obligations under the Agreement to customers of Future Street.  D. 28 at 2.

### 4.      *Big Belly Terminates the Agreement*

On April 15, 2020, Big Belly terminated the Agreement with Future Street.  D. 26 ¶ 74. In the Termination Notice, Big Belly noted that Future Street had failed to pay a total of $1,020,784.20 for invoices for products under the Agreement.  D. 27 at 21.  Citing the parties' unsuccessful attempts to negotiate a payment plan for the outstanding balance, Big Belly proposed a payment of $200,000 up front on the outstanding balance, a renegotiated Agreement and payment plan for the remaining $820,784.20 debt.  D. 27 at 21; D. 26 ¶ 74.  The Notice indicated that Future Street would be obligated to comply with the non-competition obligations in Section 12 of the Agreement.  D. 27 at 22.

At the time of the termination, Future Street owed Big Belly this substantial sum while Future Street had made $2.17 million in pre-payments and held $8 million in allegedly defective stock. D. 3 ¶ 6; D. 26 ¶ 88.  In addition to suffering a significant shortfall regarding products that would have otherwise have been ordered by Future Street, D. 28 at 11, Big Belly is still holding $339,000 worth of products and $2 million in parts that Future Street agreed to accept under the Agreement and Amendment and has failed to do.  D. 26 ¶ 89.  Future Street has made it clear to

this Court that it has placed $845,784.20 in escrow toward its outstanding debt to Big Belly. D.

28 at 3; D. 3 ¶ 90.

**IV.     Procedural History**

On May 28, 2020, Future Street filed this action against Big Belly, D. 3, and

simultaneously moved for a preliminary injunction.  D. 5.  On June 15, 2020, Future Street filed

a supplemental motion for a hearing arguing that Big Belly's opportunity to file an opposition

had passed.  D. 12.     Big Belly opposed Future Street's motion for hearing and filed its own

motion for a briefing schedule.  D. 13, 15.  The Court allowed Big Belly's motion and set a

consolidated briefing schedule and hearing date.  D. 16.  Big Belly then filed its opposition and

cross motion for injunctive relief on June 19, 2020.   D. 28.  Big Belly has also filed a verified

counterclaim against Future Street for breach of contract, breach of the implied covenant of good

faith and fair dealing, commercial disparagement, tortious interference, violation of Mass. Gen.

L. c. 93A and declaratory judgment that it properly terminated the Agreement.  D. 26.  The Court

heard the parties on the pending motions and took the cross motions under advisement.  D. 34.

**V.     Discussion**

> **A.     Future Street Has Not Shown a Likelihood of Success on the**
> **Merits on its Claims**

Although the Court considers all factors of the preliminary injunction analysis, "[t]he *sine*

*qua non* of this four-part inquiry is likelihood of success on the merits:  if the moving party cannot

demonstrate that [it] is likely to succeed in [its] quest, the remaining factors become matters of

idle curiosity."  New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir.

2002); see Boathouse Grp., Inc. v. TigerLogic Corp., 777 F. Supp. 2d 243, 248 (D. Mass. 2011)

(explaining that "[l]ikelihood of success on the merits is the critical factor in the analysis and,

accordingly, a strong likelihood of success may overcome a 'somewhat less' showing of another

element"). Future Street seeks to demonstrate likelihood of success on the merits on three claims:

breach of contract, Chapter 93A and declaratory judgment. D. 6 at 13-17.

### 1.    *Breach of Contract Claim*

To succeed on its breach of contract claim, Future Street must demonstrate that the parties

reached a valid and binding agreement, Big Belly breached the terms of that agreement and Future

Street suffered damages because of the breach. See Michelson v. Digital Fin. Servs., 167 F.3d

715, 720 (1st Cir. 1999). The parties do not dispute that the Agreement is a valid and enforceable

contract. Future Street alleges numerous breaches, but primarily focuses on Big Belly's sale of

defective products. Future Street asserts that its nonpayment was due to Big Belly's own

defective products and asserts that it was thereby excused from payment. !

"It is well established that a material breach by one party excuses the other party from

further performance under the contract." Lantor Inc. v. Ellis, No. CIV.A. 98-01064, 1998 WL

726502, at *8 (Mass. Super. Oct. 2, 1998) (quoting Ward v. American Mut. Liab. Ins. Co., 15

Mass. App. Ct. 98, 100 (1983)). A breach is considered material when it goes to an "essential

and inducing part of the contract." J. J. Reidy & Co. v. AirWater Corp., 05-cv-40049-FDS, 2007

WL 9805550, at *6 (D. Mass. Sept. 30, 2007) (quoting Bucholz v. Green Bros. Co., 272 Mass.

49, 52 (1930)). Future Street argues that Big Belly "committed the first material breach" by

attempting to terminate the Agreement after Future Street withheld payments due to defective

products. D. 30 at 6.

Considering the facts here, as presented primarily in the form of the verified complaint

sworn by Coughlan of Future Street, D. 3, and the verified counterclaim sworn by Phillips of Big

Belly, D. 28, and the various documents incorporated in same, the Court does not conclude the

allegations regarding the defects in some of Big Belly's products provided to Future Street was a

9

material breach.  First, as Phillips attests, Future Street's complaints about the products were 'spot issues" including cracking behind the top panel solar bubble, poor packaging, a loose sensor or a twisted battery cable.  D. 26 ¶ 47.  Second and more significantly, even Future Street's informal complaints regarding same do not appear to have begun until after Future Street's orders under the Agreement had slowed by fall 2019.  D. 26 ¶¶ 35, 42.  By February and March 2020, Future Street failed to make required purchase orders and payments on prior shipments from Big Belly as required under the Agreement.  D. 26 ¶¶ 49-50.   Moreover, even during the parties' attempts to resolve their dispute about the products and payment, Future Street has not disputed the amount it owes Big Belly under the Agreement.  D. 26 ¶ 63.  Third, it is not clear that the failure to pay Big Belly for product delivered pursuant to the Agreement was the result of Future Street's concerns about Big Belly's products.  D. 32 at 3; D. 32-1 ¶¶ 4-5.  Even in response to the Big Belly's April 15, 2020 notice of termination of the Agreement, Future Street, while debating the validity of the Termination Notice, cited the "Pandemic and the conditions imposed by Authorities throughout the Territory have solely prevented it from complying with its obligations" under the Agreement.  D. 26 ¶ 75; D. 27 at 18.  For all of these reasons, the Court does not conclude that Future Street has shown a material breach of the Agreement by Big Belly excusing its own payment obligations under the Agreement.

Conversely, payment, particularly of already accepted items, is considered an essential part of a contract.  G4S Tech. LLC v. Massachusetts Tech. Park Corp., 479 Mass. 721, 734  (2018) (failure to make monthly payments as agreed to in contract was material breach because payments were "essential and inducing feature") (internal quotation and citation omitted).  On this record, the Court does not conclude that Big Belly's alleged conduct excused the scope of non-payment by Future Street under the Agreement or explains why the warranty remedies for customers of

Future Street under Exhibit B to the Agreement were not sufficient to address the product issues. D. 3 at 59 (providing for repair and replacement by Big Belly for "customer(s)" defined under the Agreement as any person or entity that buys Big Belly products from Future Street, D. 3 at 37); D. 32 at 5-6 (citing same and noting that, even post-termination, Big Belly is honoring same).

To the extent that Future Street contends that Big Belly breached the Agreement by failing to engage in dispute resolution of its formal dispute notice regarding product issues on March 27, 2020, D. 6 at 10; D. 3 ¶ 85, such contention fails to explain how the Termination Notice is retaliatory or otherwise improper where Future Street's outstanding debt predated same, D. 26 ¶ 63; D. 28-1 at 19-25; D. 32 at 8-9, notice of the past-due payments predated same, D. 28-1 at 9 (March 4, 2020 notice of past-due payments), and past-due payments is a permissible basis for Big Belly's termination of the Agreement.  D. 3 at 50.  Even as Future Street asserts that it raised issues regard product defects at various points from September 2019 into March 2020, D. 30 at 8-9, it continued to make purchase order for more products from Big Belly which it accepted and did not pay, D. 28 at 8, and did not issue a formal dispute notice regarding such product issues until March 27, 2020, D. 6 at 10, after Future Street was on notice of its past-due payments.

Moreover, even if the Court had found that Future Street was likely to prevail on its breach of contract claim (or any of the claims discussed below), it is not clear what, if any injunctive relief would be warranted.  Future Street essentially asks the Court to hold Big Belly to perform under the Agreement, but as discussed below, it appears that Big Belly has properly exercised its right of termination under the Agreement.

2.      *Violation of Massachusetts General Law c. 93A ("Chapter 93A")*

The Court concludes that Future Street also has failed to show that it is reasonable likely to prevail on its unfair and deceptive trade practices claim under Mass. Gen. L. c. 93A.  To prevail

on a  Chapter 93A claim, a plaintiff must establish that (1) defendant committed an unfair or deceptive act or practice, (2) the unfair or deceptive act or practice occurred in the conduct of any trade or commerce, (3) the plaintiff suffered an injury, and (4) the unfair or deceptive conduct was a cause of the injury.  UBS Financial Services, Inc. v. Alberti, 483 Mass. 396, 410 (2019). Future Street argues that Big Belly's actions constitute a malicious, dishonest, and bad-faith campaign to skirt its obligations under the Agreement  and deprive Future Street of the benefit of its bargain.  D. 6 at 16.  It further contends that instead of addressing Future Street's concerns about product issues, Big Belly retaliated against Future Street by terminating the Agreement and threatening to ruin its reputation.  Even on the preliminary record before the Court, the sequence of events does not support this contention.  As referenced above, the slowing of Future Street's orders under the Agreement preceded even its informal complaints about products to Big Belly. Moreover, the total amount that Future Street owes Big Belly also seems to dwarf the scope of its complaints about certain products.  Moreover, Big Belly's reason for terminating the Agreement (i.e., Future Street's non-payment of past-due invoices) has never wavered whereas Future Street's reasons for such non-payment (at various times, issues with products or the effect of the pandemic) has changed.  For these reasons, Future Street has failed to demonstrate that it is reasonably likely to succeed to prevail on its c. 93A claim.

> 3.      *Declaratory Judgment*

As to its claim for declaratory judgment, Future Street argues that it also is reasonably likely to succeed on the merits since it contends that the COVID-19 pandemic and its effects qualify as a force majeure event under the Agreement "that excuses Future Street from the minimum purchase requirements under the Agreement."  D. 3 ¶ 148.    Section 24 of the Agreement provides that:

[n]either party shall be deemed in default pursuant to this Agreement so long as its failure to perform any of its obligations hereunder is occasioned solely by fire, labor disturbance, acts of civil or military authorities, acts of God, or any similar cause beyond such party's control.

D. 3 ¶ 37; D. 3 at 52.  An action for declaratory judgment "enable[s] litigants to clarify legal rights and obligations before acting upon them."  Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 534 (1st Cir. 1995).   Even assuming *arguendo* that the pandemic and effects of same are a force majeure under the Agreement, Future Street has not shown that its failure to perform its obligations under the Agreement were caused by same as required under Section 24 of the Agreement.  This is particularly true where certain of its obligation to pay Big Belly preceded the pandemic and it still paid some of the software and replacement part bills during the winter 2020 even as it had previously accepted prior shipments of Big Belly's products without required payment.  Accordingly, the Court concludes that Future Street has not shown that it is reasonably likely to succeed on its declaratory judgment claim that its non-performance is excused under the force majeure clause of the Agreement. D. 28 at 16.

**B.      As to its Cross Motion, Big Belly Has Shown a Likelihood of Success on the Merits on its Breach of Contract Claim**

Big Belly asserts that it has  established a likelihood of success on the merits that Future Street has breached the Agreement by nonpayment for a substantial number of its products and requiring Big Belly to carry millions of dollars' worth of inventory for Future Street, while failing to make mandatory orders, without any legitimate excuse.  D. 28 at 18-19.  Moreover, Big Belly asserts that its termination of the Agreement is justified and that Future Street should be held to the post-termination provisions under the Agreement.  D. 28 at 18.  As to this claim, Big Belly has at least shown a reasonable likelihood of success as non-payment is a ground for termination of the Agreement, where Future Street "fail[ed] to make any undisputed payment due. . . and such

13

failure continues for a period of at least thirty (30) days after [Big Belly] has given [Future Street] written notice to cure the situation thereof, such termination to be effective on the date stated in the termination notice.  D. 3 at 50-51.  There is no dispute that Future Street has failed to make payments, that failure has continued for at least 30 days and where payments were due upon invoice and delivery, D. 3 at 39; D. 3 at 79, the Court cannot say that the payments are even disputed as Future Street now contends.  D. 30 at 11-12.  Accordingly, Big Belly appears to be likely to prevail on its claim that its termination on the Agreement was proper and that it is reasonably likely to prevail on its claim of breach of contract against Future Street.

## C.      Considering the Risk of Irreparable Harm, the Balance of Harms and the Public Interest

Given the Court's conclusion that Future Street has not established a likelihood of success on the merits, it need not discuss the remaining factors for injunctive relief for its motion, namely the risk of irreparable harm to the movant in the absence of injunctive relief, the balance of equities, or whether the requested injunctive relief would comport with the public interest.  New Comm Wireless Servs., Inc., 287 F.3d at 9.  In the interest of completeness as to Future Street's motion and given that the Court has concluded that Big Belly has established a reasonable likelihood of success on its breach of contract claim, the Court will address these remaining factors.

Although "[l]ikelihood of success is the main bearing wall of the four-factor framework," Ross-Simons, 102 F.3d at 16, both of the first two factors, likelihood of success and irreparable harm, "are the most important and, in most cases, 'irreparable harm constitutes a necessary threshold showing for an award of preliminary injunctive relief.'"  Gonzalez-Droz v. Gonzalez-Colon, 573 F.3d 75, 79 (1st Cir. 2009) (quoting Charlesbank Equity Fund II v. Blinds to Go Inc., 370 F.3d 151, 162 (1st Cir. 2004)).  Future Street argues that it will suffer irreparable harm if its'

requested injunction is not issued because it will be unable to fill any pending or future orders, will lose out on the value of its investment in the Territory, all resulting in the destruction of its reputation and its ongoing business. D. 6 at 17; D. 7 ¶¶ 7-8. This suggestion that Future Street is on the financial brink is undercut by the fact that Future Street has been able to hold $850,000 in escrow while its non-payment dispute with Big Belly remains pending, D. 6 at 11, and during the course of its dispute with Big Belly, it was able and did pay Big Belly tens of thousands of dollars for software renewals and replacement parts for its existing units. D. 26 ¶ 74. Moreover, investment in its business related to the sale of Big Belly's products in the Territory was expressly contemplated by the Agreement. D. 3 at 38. These facts do not suggest that any financial harm would be as the result of the denial of injunctive relief or that an adequate remedy at law (i.e., contract damages and/or treble damages under c. 93A) cannot address adequately the claimed harm. By contrast, Big Belly will suffer irreparable harm if its Termination Notice, properly executed under the Agreement effectively is nullified and the parties are not held to their, bargained-for, post-termination obligations under the Agreement, and Future Street is permitted to continue to hold itself as Big Belly's licensee and sell Big Belly's products for which it has not yet paid. D. 28 at 19-20.

As to the balance of harms, they weigh in favor of the injunctive relief that Big Belly seeks where such comports with the benefits of the bargain that the parties struck in the Agreement. Such relief, as both parties recognize, D. 30 at 19, is also in the public interest when it concerns the  enforcement of a valid contract. Shipley v. Kozlowski, 926 F. Supp. 28, 30 (D. Mass. 1996); Green Earth Energy Photovoltaic Corp. v. KeyCorp., No. 19-301123-MGM, 2020 WL 1816379, at *8 (D. Mass. Jan. 10, 2020).

## VI.      Conclusion

For the aforementioned reasons, the Court DENIES Future Street's motion for a preliminary injunction, D. 5, but ALLOWS Big Belly's cross motion for a preliminary injunction, D. 28, to the extent that it seeks an order that the Termination Notice remains in effect and that the parties are bound by the post-termination provisions of the Agreement including Sections 11 and 12.  In light of this ruling, Big Belly has until August 7, 2020, to file a one-page proposed Order of Preliminary Injunctive Relief consistent with this ruling for entry by the Court.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge